**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**WOODROW O. MORAN,**

    **Plaintiff,**

**-vs-**                    **Case No. 6:09-cv-563-Orl-28DAB**

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

_____

**REPORT AND RECOMMENDATION**

**TO THE UNITED STATES DISTRICT COURT**

  This cause came on for consideration without oral argument on review of the Commissioner's administrative decision to deny Plaintiff's application for social security disability benefits. For the reasons set forth herein, it is respectfully **RECOMMENDED** that the Commissioner's decision be **REVERSED** and **REMANDED**.

## *I. BACKGROUND*

**A. Procedural History**

  Plaintiff filed for a period of disability, DIB and SSI benefits on August 14, 2006[1]. R. 17. His application was denied initially and upon reconsideration. R. 55, 61. Plaintiff requested a hearing, which was held on September 9, 2008, where Plaintiff testified by phone from the Volusia County Branch Jail, before Administrative Law Judge John D. Thompson (hereinafter referred to as "ALJ"). R. 189-226. In a decision dated October 28, 2008, the ALJ found Plaintiff not disabled as defined

---

[1]Plaintiff had previously filed for benefits on February 27, 2004 and May 26, 2005; these applications were denied initially and not appealed further. R. 17.

under the Act through the date of his decision. R. 25. Plaintiff timely filed a Request for Review of the ALJ's decision, and the Appeals Council denied Plaintiff's request on February 25, 2009. R. 4. Plaintiff filed this action for judicial review on March 30, 2009. Doc. No. 1.

### B. Medical History and Findings Summary

Plaintiff was born December 30, 1960. R. 74. He completed the 10th grade. R. 133. He worked as a construction worker for over 20 years, as a block mason and concrete finisher. R. 92. Plaintiff testified that he sliced the tendons of four fingers fighting with a knife and now has decreased range of motion and strength. R. 125, 208. He also testified that he was shot while trying to go to work and has a bullet lodged in his chest that gives him a stabbing pain when he lifts things and prevents him from walking, standing, and resting for long periods. R. 121, 125, 207, 214. He suffers from lumbar and cervical degenerative disc disease with pain that radiates into his neck and down his leg. R. 125, 141-42, 213. He has been incarcerated twice (R. 116, 137), and he has no health insurance. R. 97, 122, 202.

Plaintiff's medical history is set forth in detail in the ALJ's decision. Plaintiff alleges disability due to lower back pain, chest pain due to a gunshot wound, reduced use of his right hand, and problems with his feet. R. 27, 91, 192. After reviewing Plaintiff's medical records and Plaintiff's testimony, the ALJ found that Plaintiff suffered from a history of alcohol abuse/dependence; history of lumbar spondylosis at L4-S1; history of remote gunshot wound to chest with surgical repair and residual chest discomfort; and history of right hand laceration (1999) with reduced use for fine finger dexterity, which were "severe" medically determinable impairments, but not impairments severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. R. 19. The ALJ determined that Plaintiff retained the residual functional capacity (RFC) to perform light work, except he can only occasionally perform fine manipulation with the right

hand. R. 21. In making this determination, the ALJ found that Plaintiff's allegations regarding his limitations were not credible to the extent they were inconsistent with the residual functional capacity assessment. R. 22. Based upon Plaintiff's RFC, the ALJ determined that he could not perform past relevant work. R. 23. Considering Plaintiff's vocational profile and RFC, the ALJ applied the Medical-Vocational Guidelines (the grids), 20 C.F.R. Pt. 404, Subpt. P, App. 2, and, based on the testimony of the vocational expert ("VE"), the ALJ concluded that Plaintiff could perform work existing in significant numbers in the national economy as a cleaner, usher, food assembler, call out operator, or ticket taker. R. 24. Accordingly, the ALJ determined that Plaintiff was not under a disability, as defined in the Act, at any time through the date of the decision. R. 24.

Plaintiff asserts four points of error. First, he argues that the ALJ's reasons for rejecting Plaintiff's pain testimony are not based on substantial evidence. Second, he claims the ALJ failed to apply the correct legal standards to the opinion of Dr. Barber and a non-examining state consultant. Third, Plaintiff contends the ALJ erred by finding that Plaintiff could perform light work, which is not based on substantial evidence. Lastly, Plaintiff argues that the appropriate remedy is reversal for an award of benefits. For the reasons that follow, it is respectfully **RECOMMENDED** that the Commissioner's decision be **REVERSED** and **REMANDED**.

## II. STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable

person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" *Id.* (internal quotation and citation omitted). *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, he is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent his from doing past relevant work, he is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering his residual functional capacity, age, education, and past work) prevent his from doing other work that exists in the national economy, then he is disabled. 20 C.F.R. § 404.1520(f).

### III.  ISSUES AND ANALYSIS

    **A.**    **The weight of physicians' opinions**

Plaintiff argues that the ALJ erred in finding that he was capable of light work in spite of the opinion of Dr. Barber that Plaintiff had limitations from degenerative disc disease. He argues that the ALJ should not have assigned more weight to the opinion of the non-examining state agency physician[2] than to the opinion of the examining physician, Dr. Barber.

Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite his impairments. 20 C.F.R. § 404.1545(a); *Lewis v. Callahan*, 125 F.3d 1436,1440 (11th Cir. 1997). The focus of this assessment is on the doctor's evaluation of the claimant's condition and the medical consequences thereof. *Id.* Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis*, 125 F.3d at 1440; *Edwards*, 937 F.2d at 583; 20 C.F.R. §§ 404.1527(d), 416.927(d).

If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). However, in this case, there is no opinion from a treating physician – Plaintiff testified that he could not afford medical treatment and he had no insurance. R. 97, 122, 202.

Instead, the only opinions in the Record are from a consultative examiner and the state agency non-examining reviewing physicians. "The regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker." SSR 96-6p, 1996 WL 374180, at *2 (citing 20 C.F.R. §§ 404.1527(f), 416.927(f)). "[T]he opinions

---

[2]Plaintiff also argues that the Record is silent on whether the state agency physician is a qualified medical source (R. 133), but the Commissioner has clarified that the somewhat illegible signature belongs to Dr. Audrey Goodpasture. Doc. No. 14 at 14 n.6.

of physicians or psychologists who do not have a treatment relationship with the individual are weighed by stricter standards, based to a greater degree on medical evidence, qualifications, and explanations for the opinions, than are required of treating sources." *Id.* at *2. "[T]he opinions of State agency medical and psychological consultants and other program physicians and psychologists can be given weight only insofar as they are supported by evidence in the case record, considering such factors as the supportability of the opinion in the evidence including any evidence received at the administrative law judge and Appeals Council levels that was not before the State agency, the consistency of the opinion with the record as a whole, including other medical opinions, and any explanation for the opinion provided by the State agency medical or psychological consultant or other program physician or psychologist. The adjudicator must also consider all other factors that could have a bearing on the weight to which an opinion is entitled, including any specialization of the State agency medical or psychological consultant." *Id.* at *7.

The opinion of a non-examining physician "is entitled to little weight and taken alone does not constitute substantial evidence to support an administrative decision." *Swindle v. Sullivan*, 914 F.2d 222, 226 n.3 (11th Cir. 1990). "The opinions of non-examining, reviewing physicians . . . when contrary to those of examining physicians are entitled to little weight in a disability case, and standing alone do not constitute substantial evidence." *Hoffman v. Astrue*, 259 F. App'x 213, 217 (11th Cir. 2007).

In support of his argument that the ALJ failed to accord the proper weight to the consulting examiner's opinion in favor of the non-examining physician's opinion, Plaintiff points to Dr. Barber's notes that Plaintiff walks with difficulty, has a limp, is unable to squat, that he "could be limited in walking and standing for long periods of time," and has environmental limitations related to operating machinery. R. 124-25. Plaintiff argues that Dr. Barber's opinion is supported by x-rays (R. 113, 141

-6-

-42), a positive straight leg raising test (R. 124), prison records of back pain (R. 116-121, 137-39, 145-47, 149-50, 152, 159, 168), and Plaintiff's testimony (R. 199-200). The Commissioner responds that Plaintiff overstates Dr. Barber's findings of limitations and misstates the ALJ's basis for his decision.

The ALJ actually summarized the findings of two different consultative examiners, one from 2005, Dr. Ranganathan, and one from 2007, Dr. Barber. R. 20. In a very detailed fashion, the ALJ accurately summarized Dr. Barber's findings:

> On August 14, 2007, the claimant underwent a consultative examination by Alvan Barber, M.D. at the request of the [SSA]. At that time, he had complaints of chest, back, hip, foot, and hand pain. He reported sustaining a gunshot wound to his chest in 2005, status post surgery, which caused chest pain when lifting over 10 pounds; cracking his L1, which caused inability to stand straight, difficulty sleeping due to pain, inability to walk for long periods of time, pain in his back that radiated down his legs and right leg numbness and cutting his right hand tendons (2nd, 3rd, 4th, and 5th fingers), status post surgery, which caused difficulty closing his hand. The claimant stated that he did not have a primary care physician and was not receiving treatment or taking medication due to a lack of insurance. He stated that he could stand one minute, walk one block, sit 2 hours and lift 10 pounds. He reported smoking a half pack of cigarettes for 30 years and to alcohol abuse. Examination of the neck, chest, lungs, heart and abdomen was normal. There was no clubbing, edema, or ulcerations of the upper extremities. Sensory was intact and normal. Muscle and grip strength was 4/5 in the upper extremities bilaterally. . . . There were right proximal 2, 3, 4, and 5 finger scars with decreased range of motion. . . . Sensory testing was normal except for pain and light touch with tingling in the right foot. Muscle strength was 4/5 in the right lower extremity and 5/5 in the left. . . . Seated straight leg raising caused pain at 60 degrees. There was right greater than left lower extremity pain from hip to toes with range of motion. The back had positive low paravertebral muscle spasms and positive point tenderness in the bilateral sacroiliac joints. Supine straight leg raising at 60 degrees caused pain. Cranial nerves II-XII were grossly intact with normal function. Gross motor skills were intact, but there was a slight decrease in right fine motor skills (difficulty buttoning clothes). The claimant walked with difficulty with a right limp. He was unable to walk on his toes or heels or squat.

R. 20. The ALJ accurately summarized Dr. Barber's findings:

> Dr. Barber's assessment was lumbar degenerative disc disease with low back pain and positive straight leg raising; right hand proximal (2, 3, 4, 5) finger laceration trauma, status post surgical repair with decreased range of motion and strength; alcohol abuse;

-7-

tobacco abuse; history of gunshot wound to chest, status surgical procedure with chest wall pain.

R. 20. The ALJ considered Dr. Barber's assessment, along with the other medical and treatment notes in finding that Plaintiff had the RFC to perform light work (with only occasional performance of fine manipulation with the right hand). R. 21.

Plaintiff contends that the ALJ did not make clear the weight that he gave to Dr. Barber's opinion and he erroneously gave more weight to the opinion of the non-examining reviewing physician than to Dr. Barber's, even though Dr. Barber's opinion should have been weighted more heavily. The Commissioner argues that ALJ expressly noted that he was not giving more weight to the findings of the reviewing physician.

After reviewing all of the medical evidence, including those of Dr. Ranganathan, Dr. Barber, and those of the medical personnel at the jail (R. 20-21), Plaintiff's hearing testimony (R. 22), and evaluating Plaintiff's credibility, the ALJ stated:

> Furthermore, the description of symptoms and limitations, which the claimant has provided throughout the record has generally been inconsistent and unpersuasive. The undersigned also notes that the record does not contain any opinions from treating or examining physicians indicating that the claimant is disabled or that he has limitations greater than those determined in this decision. Furthermore, the residual functional capacity conclusions reached by the physician employed by the State Disability Determination Services also supports a finding of "not disabled." Although this physician was non-examining and therefore her opinion does not as a general matter deserve as much weight as those of examining or treating physicians, her opinion does deserve some weight, particularly in a case like this in which there exist a number of other reasons to reach similar conclusions.

R. 23.

The Commissioner argues that the state agency non-examining physician relied on Dr. Barber's findings (R. 127 part A.6 citing CE 8/14/07). However, the Court finds that she failed to discuss or cite any of Dr. Barber's opinions of Plaintiff's functional limitations, and the state agency

-8-

physician's conclusions are also contrary to or at least inconsistent with Dr. Barber's opinions of Plaintiff's limitations in his ability to walk, stand, push/pull in the upper extremities, and work around hazardous equipment. Moreover, the ALJ failed to even discuss Dr. Barber's opinion of Plaintiff's functional abilities, which was stated as:

> Physical examination reveals claimant could be limited in walking and standing for long periods of time.
> Claimant could be limited in lifting and carrying heavy objects.
> Claimant could be limited in pushing and pulling with right upper extremity.
> Claimant should not be around hazardous equipment.

R. 125. The state agency physician opined that Plaintiff could stand or walk for a total of about six hours in an eight hour workday. R. 127. While Dr. Barber did not specify an exact amount of time, he opined that "claimant could be limited in walking and standing for *long* periods of time." R. 125. In the context of Plaintiff's limitations during the average workday, which Dr. Barber knew he was being asked to assess by the Office of Disability Determinations, Plaintiff's being limited in walking and standing for "long periods of time" would almost certainly preclude him from standing/walking for 75% of the time, or "six hours in an eight hour workday." Dr. Barber also opined that Plaintiff "could be limited in pushing and pulling with right upper extremity" while the state agency physician opined his ability to push/pull was "unlimited." R. 127.

The Commissioner concedes that the state agency physician noted no environmental limitations in contrast to Dr. Barber's opinion that "claimant should not be around hazardous equipment," but argues that none of the jobs in the national economy that the ALJ cites – cleaner, usher, food assembler, surveillance systems monitor call out operator, or ticket taker – "seems likely to require hazardous equipment." Doc. No. 14 at 10 n.4. Even if that is the case, the ALJ relied on the state agency physician's opinion, implicitly rejecting Dr. Barber's opinion on this point without comment, and omitted the hazardous equipment limitation from the hypothetical to the VE.

The Court rejects the Commissioner's argument that Dr. Barber's opinions are "arguably consistent" with those of the state agency physician's because Dr. Barber used the conditional "could be" limited. Doc. No. 14 at 15. Dr. Barber's opinion was set forth in the functional limitations section of his consultative examination report, on which he knew the SSA was intending to rely. R. 122-25. Dr. Barber stated at the beginning of the report that no treatment was rendered and, under functional limitations, because Plaintiff was not being treated, Dr. Barber added: "Claimant has been informed and acknowledged that they need to actively pursue medical treatment plans for the above stated medical impressions and problems." R. 125. Conceivably, Plaintiff's condition "could" improve with the proper treatment, but as he testified, he was not receiving treatment except at the jail or the emergency room very occasionally.

In the context of partially discounting Plaintiff's statements about pain, the ALJ stated, "[C]onsultative examinations in 2005 and 2007 do not document any significant limitations that would prevent the claimant from working." R. 22. At a minimum, the ALJ should have specifically acknowledged and discussed Dr. Barber's opinions of Plaintiff's functional limitations as limiting Plaintiff in those respects Dr. Barber listed. Even if the ALJ was unclear of Dr. Barber's meaning in saying Plaintiff "could be limited," he could have asked Dr. Barber to clarify his opinion. Instead, the ALJ omitted any mention of Dr. Barber's functional limitation opinions and chose to rely instead exclusively on the RFC assessment of the non-examining state physician in order to find Plaintiff not disabled.

In addition, the ALJ incorrectly stated that "the record does not contain any opinions from treating or examining physicians indicating that the claimant is disabled *or that he has limitations greater than those determined in this decision.*" R. 23 (emphasis added). The ALJ's statement in this

regard ignores Dr. Barber's opinion as to Plaintiff's functional limitations, which were more restrictive than those assigned by the state agency non-examining physician and adopted by the ALJ.

Additional evidence submitted to the ALJ but not before Dr. Barber (whose consultative examination report is dated August 2007) also indicates that Plaintiff repeatedly sought pain medication which was prescribed during his incarceration in 2008, and an x-ray done during that time showed moderate degenerative joint disease in his spine at L5-S1 and mild degenerative changes in his cervical spine. R. 141-42; *see generally* R. 137-39, 145-59, 168.

Because the ALJ omitted Dr. Barber's opinion of Plaintiff's functional limitations and failed to explain why he did not credit Dr. Barber's opinion, his decision was not based on substantial evidence. Accordingly, it is respectfully **RECOMMENDED** that the decision be **REVERSED** and **REMANDED**.

      **B.**    **Pain and credibility.**

Plaintiff asserts that the ALJ erred in evaluating his pain because the ALJ's reasons for rejecting Plaintiff's pain testimony were not based on substantial evidence, and the ALJ should have found him credible. The Commissioner argues that the ALJ's determination as to Plaintiff's credibility and statements of pain were based on substantial evidence.

Pain is a non-exertional impairment. *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising

-11-

from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Foote*, 67 F.3d at 1560, *quoting Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). Pain alone can be disabling, even when its existence is unsupported by objective evidence, *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

After discussing Plaintiff's RFC, the ALJ discussed his findings about Plaintiff's statements concerning pain:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.
>
> The record shows that the claimant is not receiving any type of ongoing medical treatment for his allegedly disabling impairments nor is he taking any prescription medications on a regular basis. The record shows that the claimant has received some treatment/medication since being incarcerated in June of 2008; however, prior to that time, there are no medical records in the file from any treating physician. At the hearing, the claimant testified that he had not received any medical treatment in three years and that he was not currently taking any medications due to no health insurance. However, the undersigned notes that there are Federal and State agencies available to help individuals with medical treatment and medication. . . . A review of the claimant's work history shows that the claimant worked only sporadically prior to the alleged disability onset date, which raises a question as to whether the claimant's continuing unemployment is actually due to medical impairments. Furthermore, the description of symptoms and limitations, which the claimant has provided throughout the record, has generally been inconsistent and unpersuasive. The undersigned also notes that the record does not contain any opinions from treating or examining physicians indicating that the claimant is disabled or that he has limitations greater than those determined in this decision. Furthermore, the residual functional capacity conclusions reached by the physician employed by the Stet Disability Determination Services also supports a finding of "not disabled." " Although this physician was non-examining and therefore her opinion does not as a general matter deserve as much weight as those of examining or treating physicians, her opinion does deserve some weight, particularly in a case like this in which there exist a number of other reasons to reach similar conclusions.

R. 23.

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. As a matter of law, the failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true. *Foote*, 67 F.3d at 1561-62; *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

As discussed in the previous section, in this case, the ALJ's omission of Dr. Barber's functional limitations and total reliance on the state agency physician's opinion was not based on substantial evidence. The ALJ's discounting of Plaintiff's credibility and statements concerning pain were based in part on the ALJ's reliance on the state agency physician's opinion, thus his discounting of Plaintiff's credibility was also not based on substantial evidence and should be **REVERSED** and **REMANDED** on that basis as well.

### C. Remand for benefits not warranted

Plaintiff contends that the case should be remanded with an order to the SSA for an award of benefits because Plaintiff's pain testimony is supported by the medical evidence. The standard warranting a remand for an award of benefits is appropriate where the Commissioner "has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt." *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993).

In this case, Plaintiff's disability has not been established "without any doubt." The case must be remanded to the ALJ to, first, discuss Dr. Barber's opinion (or order a new consultative examination so the examiner has the benefit of the 2008 x-rays from the Volusia County Jail), and,

in deciding Plaintiff's functional limitations, and in positing the appropriate hypothetical to the VE, to decide whether Plaintiff is capable of at least sedentary (if not light) work, and whether there is other work in the national economy he can perform at that level. In addition, the ALJ previously noted in his decision that there was medical evidence of a medically determinable substance abuse disorder, *i.e.*, alcohol abuse, but did not reach the issue of whether it was material to the claimant's disability. R.24. On remand, the ALJ will address the issue if appropriate.

## *IV. CONCLUSION*

It is respectfully **RECOMMENDED** that the Commissioner's decision be **REVERSED** under sentence four of 42 U.S.C. § 405(g) and the case be **REMANDED** to the Commissioner of Social Security for the ALJ to either discuss Dr. Barber's opinion or order a new consultative examination so the examiner has the benefit of the 2008 x-rays from the Volusia County Jail; to decide Plaintiff's RFC; and hold a supplemental hearing with testimony from Plaintiff and from a vocational expert as to what work he could perform, considering his vocational factors and his functional limitations; and address the issue, if appropriate, of the materiality of Plaintiff's alcohol abuse to disability.

It is further **RECOMMENDED** that the Clerk of the Court be directed to enter a separate judgment pursuant to Rule 58 of the Federal Rules of Civil Procedure and thereafter close the case.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on April 19, 2010.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Courtroom Deputy